**Richmond**

STEVAN EUGENE REA

v.

COMMONWEALTH OF VIRGINIA

No. 1951-90-2

Decided July 28, 1992

COUNSEL

Craig S. Cooley (Henry A. Conner, Jr., on briefs), for appellant.

Virginia B. Theisen, Assistant Attorney General (Mary Sue Terry, Attorney General, on briefs), for appellee.

OPINION

**BRAY, J.**—Stevan Eugene Rea (defendant) was convicted of three counts of capital murder, three counts of first-degree murder, two counts of robbery, two counts of burglary with the intent to commit larceny, burglary with the intent to commit robbery, grand larceny and six counts of use of a firearm in the commission of a felony. In accordance with the jury's verdict, he was sentenced to imprisonment for nine life terms and forty-seven years. On appeal, defendant contends that (1) the capital murder convictions were barred by his guilty pleas to the lesser included first-degree murder offenses, (2) the trial court constructively entered a nolle prosequi on the first-degree murder indictments by withholding judgment on the guilty pleas, and (3) the evidence was insufficient to support the convictions.

We agree that, although further prosecution of the capital murder charges was not barred by defendant's guilty pleas to first-degree murder, the ensuing convictions for both first-degree and capital murder offend the constitutional guarantee against multiple punishments for the same offense. Consequently, the three first-degree murder convictions and related sentences are vacated, and the remaining convictions are affirmed.

The record discloses that defendant, a juvenile, burglarized the home of Larry, Emily and son, Eddie, Walker during the early morning hours of November 9, 1989. While the family was asleep, defendant entered through the cellar door, which "was always unlocked," stole several articles, and, accompanied by a friend, "drove off" in the Walker automobile. Defendant later stated to the friend that they "should have killed [the Walkers] so there would be no witnesses."

Several months thereafter, on the evening of Friday, March 23, 1990, defendant met with friends Chris Palmer (Palmer) and Shelby Inge (Inge) to discuss "plans . . . to run away." Defendant, while "carrying [a] shotgun," told Palmer of a "place that he could get keys and money from." He claimed to know "the family," "that they had a door that was always unlocked, and he knew where everything was in the house." The following day, defendant advised Inge that "tonight's the night."

At approximately 4:00 a.m. on March 25, 1990, defendant "came around to" the bedroom window of Jackie Kulp (Kulp), who was also involved in the "plans . . . to run away." She "went out the window," joined defendant and accompanied him to the Walker residence. Kulp observed defendant, then armed with a rifle, enter the home "through the basement door," and waited while he "went upstairs." When defendant "came back," the two "left," "picked up [Palmer]," and spent "the rest of the day" at "a construction sight [sic]."

The next morning, defendant returned to the house with Kulp and Palmer and, once again, entered the home. While he was inside, police discovered Kulp and Palmer asleep in the Walker vehicle and questioned them. Kulp and Palmer "lied" to the officers and "said they were out riding around all night and fell asleep in the car." Two officers "knocked" on the front and side doors of the residence, received no response, and "left."

Neighbors discovered the dead bodies of Larry, Emily and Eddie Walker in their home later that day. Each had been killed by a shot to the head from a .22 rifle.

On March 31, 1990, defendant, Kulp and Palmer were discovered sleeping inside the Walker vehicle, "parked" at a "boat ramp." Defendant's .22 rifle and the wallets of Larry and Emily Walker were found in the car. Defendant confessed to the murders, explaining that he shot Emily Walker because she "was fooling around" "with his father" and Eddie Walker because they "never got along." He also admitted theft of the wallets and automobile.

When arraigned on all charges, defendant pled guilty to the three first-degree murder indictments, and not guilty to the remaining offenses, including the capital murders. After finding the pleas voluntary and otherwise proper, the trial court decided to defer further consideration of the guilty pleas, and submit the remaining charges to the jury. The jury convicted defendant of three capital murders and, thereafter, the trial judge convicted defendant on his three guilty pleas to first-degree murder. Thus, six murder convictions resulted from the three homicides.[1]

■ Defendant first argues that Code § 19.2-294[2] precluded the capital murder convictions following his guilty pleas to the lesser included first-degree murder offenses. However, this Court recently held that Code § 19.2-294 applies only to "successive proceedings or prosecutions," and "does not bar multiple convictions for the same act when those convictions are obtained in a single trial." *Hall v. Commonwealth*, 14 Va. App. 892, 894, 421 S.E.2d 455, 457 (1992).

■ The several indictments against defendant "arose out of the same incident," "were handed down by the same grand jury on

---

[1] The trial judge noted "that there were three victims . . . and accordingly there can only . . . be three convictions of homicide. But . . . this is a case of first impression in . . . Virginia . . . and the Court believes that the matter should be resolved by the Appellate Court as to the issue of whether his pleas of guilty to first degree murder . . . actually placed him in jeopardy of the capital murder convictions. And, of course, the Appellate Court [may] vacate the convictions [it] finds . . . [in]appropriate."

[2] Code § 19.2-294 provides that if "the same act be a violation of two or more statutes," "conviction under one of such statutes . . . shall be a bar to a prosecution or proceeding under the other."

the same day," and defendant was jointly "arraign[ed] . . . on all charges." *Walker v. Commonwealth*, 14 Va. App. 203, 205, 415 S.E.2d 446, 447 (1992). By electing to plead guilty to three charges and not guilty to the remainder, defendant neither "transformed the single prosecution into two separate prosecutions nor captured for himself any special protections against successive prosecutions under the double jeopardy clause." *Id.* at 205-06, 415 S.E.2d at 447; *see United States v. Quinones*, 906 F.2d 924, 928 (2d Cir. 1990), *cert. denied*, 498 U.S. 1069 (1991); *Stevens v. Commonwealth*, 14 Va. App. 238, 415 S.E.2d 881 (1992). The convictions were thus obtained in a single trial and not barred by Code § 19.2-294.

■ Defendant next complains that the trial court erred by withholding judgment on his guilty pleas, arguing that acceptance of the pleas would have forestalled prosecution of the capital murder charges under principles of constitutional double jeopardy.[3] The Double Jeopardy Clause of the Fifth Amendment " 'protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.' " *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)); U.S. Const. amend. V.

However, in *Ohio v. Johnson*, 467 U.S. 493 (1984), the United States Supreme Court expressly held that prosecution of a greater offense is not constitutionally prohibited following a guilty plea to a lesser included offense during a single trial. *Id.* at 494. The Court noted that the defendant "offered only to resolve a part of

---

[3] In making this argument, defendant notes that the trial court instructed the jury on the lesser included offense of first degree murder on each capital murder charge. We recognize that, in accordance with Code § 19.2-257, "it is reversible error for a trial court to submit the degree of guilt or the question of punishment to the jury" "where a guilty plea to the whole of an indictment has been tendered." *Graham v. Commonwealth*, 11 Va. App. 133, 140, 397 S.E.2d 270, 274 (1990).

However, the instruction was rendered "at the request of the defendant" over the objection of the Commonwealth. "[H]aving agreed upon the action taken by the trial court," defendant may not now "assume an inconsistent position." *Clark v. Commonwealth*, 220 Va. 201, 214, 257 S.E.2d 784, 792 (1979), *cert. denied*, 444 U.S. 1049 (1980). "No litigant, even a defendant in a criminal case, will be permitted to approbate and reprobate — to invite error . . . and then to take advantage of the situation created by his own wrong." *Fisher v. Commonwealth*, 236 Va. 403, 417, 374 S.E.2d 46, 54 (1988), *cert. denied*, 490 U.S. 1028 (1989).

the charges against him" and, "[n]otwithstanding the trial court's acceptance of [his] guilty pleas," he was not "entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges." *Id.* at 501-02.

The Court rejected the notion that "trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt . . . on one count . . . immediately raises a double jeopardy bar to continued prosecution on any remaining counts." *Id.* at 501. Such circumstances do not "constitute the type of 'multiple prosecution' prohibited by the Double Jeopardy Clause." *Id.* at 494. Thus, the defendant's tendered guilty pleas to first degree murder did not bar the Commonwealth from pursuing the capital murder charges.

■ Nevertheless, the Double Jeopardy Clause also protects a defendant from multiple punishment for the same offense. U.S. Const. amend. V; *Johnson*, 467 U.S. at 500; *Brown*, 432 U.S. at 165. Under the traditional *Blockburger* analysis, a lesser included and a greater offense are the "same," and conviction and punishment for both offends this constitutional guarantee. *Brown*, 432 U.S. at 166 n.6 (1977); *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *Walker*, 14 Va. App. at 206, 415 S.E.2d at 448. The conviction of the lesser included crime is subsumed in the greater conviction. *Buchanan v. Commonwealth*, 238 Va. 389, 415, 384 S.E.2d 757, 772 (1989), *cert. denied*, 493 U.S. 1063 (1990); *Brown v. Commonwealth*, 222 Va. 111, 116, 279 S.E.2d 142, 145 (1981). Therefore, defendant's convictions and related sentences for first-degree murder must be vacated.

Defendant next argues that the trial court constructively entered a nolle prosequi on the three first-degree murder indictments by withholding a finding on the guilty pleas. However, Code § 19.2-265.3 requires that a "[n]olle prosequi shall be entered only in the discretion of the court, upon motion of the Commonwealth with good cause therefor shown." Thus, the statute clearly does not contemplate a "constructive nolle prosequi," and defendant's claim is without merit.

■ Lastly, defendant contends that the evidence was insufficient to support his convictions. Under familiar principles of appellate review, we examine the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). The jury's verdict will not be disturbed on appeal unless it appears from the evidence that it is plainly wrong or without evidence to support it. *Id.*

The record discloses that defendant burglarized the Walkers' home several months prior to the murders, stating that he "should have killed" them. He was seen again entering the home the day before the bodies were discovered, armed with a .22 rifle. When later apprehended in the stolen Walker vehicle, defendant still possessed the rifle as well as two wallets belonging to Larry and Emily Walker. Finally, defendant confessed to the crimes, and his statement was consistent with the evidence. The convictions thus find ample support in the record.

Accordingly, defendant's three convictions of first-degree murder are vacated, and the remaining convictions are affirmed.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*

Baker, J., and Coleman, J., concurred.