COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Clements and Haley
Argued at Chesapeake, Virginia


PHILLIP JAMES OSTRANDER, S/K/A
  PHILIP JAMES OSTRANDER
                                                            OPINION BY
v.        Record No. 2194-06-1          JUDGE JEAN HARRISON CLEMENTS
                                                          MARCH 18, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Randall D. Smith, Judge

James O. Broccoletti (Zoby & Broccoletti, P.C., on brief), for
appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Phillip James Ostrander (appellant) was convicted and sentenced for solicitation to commit

murder, in violation of Code § 18.2-29, and attempted capital murder for hire, in violation of Code

§§ 18.2-31(2) and 18.2-25.  On appeal, appellant contends his prosecution for attempted murder

for hire was barred on double jeopardy grounds by his guilty plea to the solicitation to commit

murder offense.  Alternatively, he contends the imposition of sentences for both offenses

violated the constitutional prohibition against multiple punishments for the same offense.

Finding no error, we affirm appellant's convictions and sentences.

I.  BACKGROUND

As a result of appellant's efforts "on or about August 28, 2005" to have the purported

paramour of his estranged wife killed, appellant was indicted by a grand jury for attempted

capital murder and for solicitation to commit murder.  At the beginning of the trial on those

charges, appellant pled guilty to the solicitation to commit murder charge.  He then moved to

dismiss the attempted capital murder for hire charge, arguing the prosecution of that charge was barred on double jeopardy grounds because solicitation to commit murder is a lesser-included offense of attempted capital murder for hire. The trial judge accepted appellant's guilty plea and took appellant's motion to dismiss under advisement. Immediately thereafter, appellant pled not guilty to the attempted capital murder for hire charge and was tried by a jury on that charge.

At the close of the Commonwealth's evidence, appellant renewed his double jeopardy motion to dismiss the attempted capital murder for hire charge, asserting that no evidence was presented "that would separate" the attempted capital murder for hire charge from the solicitation to commit murder charge. "[I]n order to hire somebody to commit a capital murder," defense counsel argued, "you have to solicit them. It's part and parcel in the hiring."

In response, the prosecutor argued that the evidence established that appellant committed two "distinct offenses":

> One, we have solicitation where the defendant asks [his acquaintance in July 2005] to arrange for the killing of [appellant's wife's purported paramour]. That would be enough for the court to find him guilty of solicitation to commit murder, just for asking another individual to do that. Then we have attempted capital murder which requires the overt yet ineffectual act to commit the crime of murder. [On August 28, 2005,] we have the defendant showing the undercover hit man and [the acquaintance] around town where the locations of the hit could occur. We also have the defendant handing over cash to them. This is an overt act toward the commission of the murder.

The trial judge replied that the Commonwealth's position "may well be true" if the Commonwealth had chronologically distinguished the two offenses in the indictments, "but the indictments allege that both offenses occurred on August 28th."

Acknowledging he understood the judge's view, the prosecutor further argued that, even when limited to the date alleged in the indictments, the evidence still established two distinct crimes. Apparently rejecting the Commonwealth's argument, the trial judge returned to

appellant's double jeopardy argument, noting that, even if "solicitation to commit murder [were] a lesser included offense of attempted capital murder, . . . the defendant may be barred from being convicted of both, but he doesn't get to pick which one he's convicted of." Wanting to consider the matter further, however, the trial judge again took appellant's motion to dismiss the attempted capital murder for hire charge under advisement.

At the close of all the evidence, appellant again renewed his motion and the trial judge continued to take it under advisement. The jury found appellant guilty of attempted capital murder for hire and recommended a sentence of thirty years' imprisonment.

At the sentencing hearing, the trial judge heard further argument on appellant's double jeopardy motion to dismiss the attempted capital murder for hire charge. Concluding that the "simultaneous prosecution" of the two charges was not barred on double jeopardy grounds, the trial judge denied the motion. Further concluding that, when "examined in the abstract rather than with reference to the facts of the particular case that's under review," solicitation to commit murder and attempted capital murder for hire were "separate offenses," the judge also denied appellant's subsequent double jeopardy motion to vacate the solicitation to commit murder charge and impose sentence solely on the attempted capital murder for hire charge. The judge then convicted appellant, upon his guilty plea, of solicitation to commit murder; sentenced appellant on that conviction to ten years' imprisonment, with all years suspended upon certain conditions; and imposed the thirty-year sentence fixed by the jury on the attempted capital murder for hire conviction.

This appeal followed.

## II. ANALYSIS

On appeal, appellant contends the trial judge erred in denying his double jeopardy motion to dismiss the attempted capital murder for hire charge. Alternatively, he contends the trial judge erred

- 3 -

in denying his subsequent double jeopardy motion to vacate the solicitation to commit murder charge and impose sentence solely on the attempted capital murder for hire charge. We disagree with both contentions.[1]

The Double Jeopardy Clauses of the United States and Virginia Constitutions protect "against a second prosecution for the same offense after either an acquittal or a conviction of that offense and against multiple punishments for the same offense." Coleman v. Commonwealth, 261 Va. 196, 199, 539 S.E.2d 732, 733 (2001); see Stephens v. Commonwealth, 263 Va. 58, 62, 557 S.E.2d 227, 230 (2002) ("Virginia's constitutional guarantee against double jeopardy affords a defendant the same guarantees as the federal Double Jeopardy Clause."). The prohibition against successive prosecutions for the "same offense," however, does not apply where the defendant is tried in a single trial. See Ohio v. Johnson, 467 U.S. 493, 500 (1984) ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution."); Clagett v. Commonwealth, 252 Va. 79, 95, 472 S.E.2d 263, 272 (1996) ("Generally, a defendant cannot be placed in jeopardy more than once for a single criminal act. However, the state may, under one or multiple indictments, charge a defendant using multiple theories concerning the same crime or greater and lesser crimes arising out of the same act or transaction. In such cases, the prohibition against 'multiple prosecution' double jeopardy does not apply so long as the defendant is arraigned and tried in a single proceeding."). Indeed, "[i]n the single-trial context . . . , 'the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.'" West v. Dir. of the Dep't

---

[1] For purposes of this appeal, we assume, without deciding, that the evidence established that appellant's efforts "on or about August 28, 2005" to have the purported paramour of his estranged wife killed constituted one continuous criminal act, as appellant claims.

of Corr., 273 Va. 56, 63, 639 S.E.2d 190, 195 (2007) (quoting Brown v. Ohio, 432 U.S. 161, 165 (1980)).

Nonetheless, appellant argues his guilty plea to the solicitation to commit murder charge barred any further prosecution on the attempted capital murder for hire charge. Inherent in appellant's argument is the claim that the trial judge's acceptance of appellant's guilty plea on the solicitation charge and appellant's further prosecution on the attempted capital murder charge constituted two separate prosecutions and were thus subject to the constitutional prohibition against successive prosecutions for the "same offense." Such an assertion, however, runs directly counter to the settled principle that a defendant's election to plead guilty at trial to one charge and not guilty to another charge arising from the same criminal act "neither 'transform[s] the single prosecution into two separate prosecutions nor capture[s] for [the defendant] any special protections against successive prosecutions under the [D]ouble [J]eopardy [C]lause.'" Rea v. Commonwealth, 14 Va. App. 940, 944, 421 S.E.2d 464, 467 (1992) (quoting Walker v. Commonwealth, 14 Va. App. 203, 205-06, 415 S.E.2d 446, 447 (1992)); see also Stevens v. Commonwealth, 14 Va. App. 238, 242-43, 415 S.E.2d 881, 884 (1992) (holding that the defendant's prosecution for conspiracy to commit murder and the trial court's previous acceptance of the defendant's guilty pleas to other charges arising from the same criminal act did not constitute "successive prosecutions").

In Rea, the appellant in that case was charged with three counts of capital murder and three counts of first-degree murder, all arising from the same incident. 14 Va. App. at 942-43, 421 S.E.2d at 466. After pleading guilty to the first-degree murder charges, the appellant was convicted by a jury on the capital murder charges. Id. at 943, 421 S.E.2d at 466. On appeal, the appellant argued his pleading guilty to the first-degree murder charges "forestalled prosecution

of the capital murder charges under principles of constitutional double jeopardy." Id. at 944, 421 S.E.2d at 467.  This Court rejected appellant's argument, noting as follows:

> [I]n Ohio v. Johnson, 467 U.S. 493 (1984), the United States Supreme Court expressly held that prosecution of a greater offense is not constitutionally prohibited following a guilty plea to a lesser included offense during a single trial.  Id. at 494.  The Court noted that the defendant "offered only to resolve a part of the charges against him" and, "notwithstanding the trial court's acceptance of [his] guilty pleas," he was not "entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges."  Id. at 501-02.
> The Court rejected the notion that "trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt . . . on one count . . . immediately raises a double jeopardy bar to continued prosecution on any remaining counts."  Id. at 501.  Such circumstances do not "constitute the type of 'multiple prosecution' prohibited by the Double Jeopardy Clause."  Id. at 494.  Thus, the defendant's tendered guilty pleas to first-degree murder did not bar the Commonwealth from pursuing the capital murder charges.

Id. at 944-45, 421 S.E.2d at 467-68 (alteration in original).

In this case, as in Rea, both charges against appellant were issued on the same day by the same grand jury, and appellant was arraigned on both charges at the same proceeding.  It is clear, therefore, that the trial judge's acceptance of appellant's guilty plea on the solicitation charge and appellant's prosecution on the attempted capital murder charge were both part of the same trial on the two charges and thus constituted a single, simultaneous prosecution for double jeopardy purposes, rather than separate, successive prosecutions.  Thus, the double jeopardy protection against successive prosecutions was not implicated.

Accordingly, as the trial judge correctly concluded, the simultaneous prosecution of the two charges was not barred on double jeopardy grounds.  We hold, therefore, that the trial judge did not err in denying appellant's motion to dismiss and permitting the Commonwealth to prosecute appellant on the attempted capital murder for hire charge.

The question remains, however, whether, in being sentenced for both crimes, appellant was improperly subjected to multiple punishments for the "same offense." Appellant asserts his double jeopardy right to be free from such punishments was violated because solicitation to commit murder is a lesser-included offense of, and thus the "same offense" for double jeopardy purposes, as attempted capital murder for hire. Consequently, appellant argues, his conviction for solicitation to commit murder should have been vacated. We disagree.

As alluded to earlier, although the double jeopardy protections permit a defendant to be simultaneously prosecuted for multiple crimes constituting the "same offense," the defendant may not be cumulatively punished for those crimes. Johnson, 467 U.S. at 500; West, 273 Va. at 63, 639 S.E.2d at 195; see also Clagett, 252 Va. at 95, 472 S.E.2d at 272 (holding that, when prosecuted in a single trial for multiple crimes, "the accused cannot be subjected to more than one conviction and punishment for each discrete criminal act"); Schwartz v. Commonwealth, 45 Va. App. 407, 440, 611 S.E.2d 631, 647 (2005) ("[S]ubjecting a defendant to cumulative punishments for the 'same offense' violates both state and federal protections against double jeopardy."). Thus, where a defendant is convicted in a single trial of two crimes constituting the "same offense," the "proper remedy is to vacate both the conviction and sentence of the lesser . . . offense while leaving in place the conviction and sentence on the greater offense." Buchanan v. Commonwealth, 238 Va. 389, 415, 384 S.E.2d 757, 772 (1989).

Accordingly, we must determine whether the offense of solicitation to commit murder, under Code § 18.2-29, is the "same offense" for double jeopardy purposes as attempted capital murder for hire, under Code § 18.2-31(2). A "greater offense" is "by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." Brown, 432 U.S. at 168. Thus, where a defendant is simultaneously prosecuted for two offenses arising from the same criminal act, the test for determining if the two offenses are the "same offense" for double jeopardy purposes is

"'whether each [offense] requires proof of a fact which the other does not.'" West, 273 Va. at 63, 639 S.E.2d at 195 (alteration in original) (quoting Blockburger v. United States, 284 U.S. 299, 304 (1932)); see Brown, 432 U.S. at 166 ("The established test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment was stated in Blockburger . . . ."). "In applying this test, the two offenses must be considered in the abstract, rather than in the context of the facts of the particular case being reviewed." West, 273 Va. at 63, 639 S.E.2d at 195.

Code § 18.2-29 provides, in pertinent part, that "[a]ny person who commands, entreats, or otherwise attempts to persuade another person to commit a murder is guilty of a felony punishable by confinement in a state correctional facility for a term not less than five years or more than forty years." Code § 18.2-31(2) provides that "[t]he willful, deliberate, and premeditated killing of any person by another for hire" constitutes capital murder. Additionally, the crime of attempted capital murder for hire requires proof that the accused performed a direct act toward the commission of the contemplated murder. Ashford v. Commonwealth, 47 Va. App. 676, 681, 626 S.E.2d 464, 466 (2006).

Appellant concedes that the offense of attempted capital murder for hire requires proof of a fact that the offense of solicitation to commit murder does not—namely, that the accused performed a direct act toward the commission of the contemplated murder. See Wiseman v. Commonwealth, 143 Va. 631, 637-38, 130 S.E. 249, 251 (1925) ("Solicitation, or inciting to crime, does not proceed to the point of some overt act in the commission of crime. When it proceeds to this point it becomes an attempt to commit crime and is indictable as such."); Ford v. Commonwealth, 10 Va. App. 224, 226, 391 S.E.2d 603, 604 (1990) ("[T]he act of solicitation may be completed before any attempt is made to commit the solicited crime."). He argues, however, that a solicitation to commit murder conviction does not require proof of any fact that an attempted capital murder for hire conviction

- 8 -

does not.  "One cannot commit attempted capital murder for hire," he asserts, "without first soliciting someone to commit the murder."  The gist of the crime, he further argues, "is that the defendant solicited another individual to commit the murder."  Thus, appellant concludes, solicitation to commit murder is a lesser-included offense of attempted capital murder for hire.

Appellant's argument, however, ignores the plain language of Code § 18.2-31(2), which allows an accused to be convicted of capital murder for hire if he either hires someone to do the killing, see Fisher v. Commonwealth, 236 Va. 403, 406-08, 374 S.E.2d  46, 47-49 (1988), or does the killing himself after having been hired by someone else to do it, see Stockton v. Commonwealth, 227 Va. 124, 145-46, 314 S.E.2d 371, 384-85 (1984).  Plainly, an accused who does or attempts to do the killing himself after being hired by another to do so could not be convicted of solicitation to commit murder.  He would be the "solicitee," rather than the "solicitor." Thus, proof that the accused solicited someone else to commit the murder would not be required in such cases.

It is clear, therefore, that, when considered in the abstract without reference to the particular facts of the instant case, a solicitation to commit murder conviction requires proof of a fact that an attempted capital murder for hire conviction does not—namely, that the accused solicited another person to commit a murder.  Cf. Coleman, 261 Va. at 200, 539 S.E.2d at 734 (looking, when applying the Blockburger test, at the charged offenses in the abstract and considering, in doing so, the other offenses contemplated by the same statutory provisions).  Consequently, solicitation to commit murder is not a lesser-included offense of attempted capital murder for hire and the two offenses are not the "same offense" for purposes of double jeopardy.

Hence, appellant was not subjected to multiple punishments for the "same offense." Accordingly, we hold the trial judge did not err in denying appellant's double jeopardy motion to

vacate the solicitation to commit murder charge and impose sentence solely on the attempted capital murder for hire charge.

## III. CONCLUSION

For these reasons, we affirm appellant's convictions and sentences.

<u>Affirmed.</u>

Humphreys, J., concurring.

Because I would reach the same result as the majority, but for different reasons, I write separately.

As the majority states, the Double Jeopardy Clauses of the United States and Virginia Constitutions protect "against a second prosecution for the same offense after either an acquittal or a conviction of that offense and against multiple punishments for the same offense." Coleman v. Commonwealth, 261 Va. 196, 199, 539 S.E.2d 732, 733 (2001). For double jeopardy purposes, one offense is the same as another if it involves "the identical act and crime both in law and fact[.]" Henson v. Commonwealth, 165 Va. 829, 832, 183 S.E. 438, 439 (1936) (citation omitted). However, "if the same act or transaction was not involved in the two offenses, [the Double Jeopardy Clause] does not bar the subsequent prosecution." Peake v. Commonwealth, 46 Va. App. 35, 40, 614 S.E.2d 672, 676 (2005). A defendant bears the burden of establishing the identity of the offenses material to his double jeopardy plea. Cooper v. Commonwealth, 13 Va. App. 642, 644, 414 S.E.2d 435, 436 (1992).

Separate crimes that happen to occur on or about the same day do not necessarily offend the Double Jeopardy Clause. As the majority notes, the issue is whether or not a course of criminal conduct, in the abstract, constitutes a single criminal offense or multiple criminal offenses. Ostrander argues, and the majority assumes for the purposes of its analysis, that because the indictments allege that both the criminal solicitation and the attempted capital murder occurred on the same date, they must necessarily have occurred simultaneously. Yet it is Ostrander's burden as the appellant to provide us with a record that supports his factual assertion that such was the case. Jenkins v. Winchester Dep't of Soc. Servs., 12 Va. App. 1178, 1185, 409 S.E.2d 16, 20 (1991) ("The burden is upon the appellant to provide us with a record which substantiates the claim of error."). See also Cooper, 13 Va. App. at 644, 414 S.E.2d at 436 ("Customarily, a defendant carries

- 11 -

[his] burden [of establishing the identity of the offenses material to his double jeopardy plea] by 'production of the record or transcript of the initial trial.'" (quoting Low v. Commonwealth, 11 Va. App. 48, 50, 396 S.E.2d 383, 384 (1990))).

On the record before us, neither the Commonwealth's proffer of evidence in support of Ostrander's guilty plea to criminal solicitation, nor the evidence presented to the jury in support of the offense of attempted capital murder suggest that this was necessarily the case. Indeed, had Ostrander not entered his guilty plea to one of the charges, the record contains evidence from which the jury could have found Ostrander guilty of both attempted capital murder for hire and solicitation to commit capital murder based on conduct that occurred on two or more separate occasions. Because the evidence supports convictions based on multiple discrete incidents that occurred "on or about" the date alleged in the indictments, in my view the two convictions are not for the "same offense," and I would affirm the convictions without the need to conduct a double jeopardy analysis.

Viewed in the light most favorable to the Commonwealth, Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987), the evidence proved that in July 2005, Ostrander contacted Patrick Fleming ("Fleming"), an acquaintance of his, and told him he "had some work for [him]." Ostrander asked Fleming to travel from his home in Ohio to Virginia to meet with him. When Fleming met with Ostrander, Ostrander described his ex-wife's boyfriend as a "piece of fucking shit" who "deserve[d] to die." Ostrander wanted Fleming to kill his ex-wife's boyfriend, and "beat up" his ex-wife's attorney. Ostrander showed Fleming the boyfriend's business and residence, and started "breaking down a plan" for Fleming to kill the boyfriend. Fleming "was kind of taken back by the whole thing," and said he never intended to carry out the murder plan but acted as though he would because he was "at [Ostrander's] mercy for . . . transportation to get back [to Ohio]." He led Ostrander to believe he "had to recruit somebody" to do the job. Ostrander gave Fleming a small amount of money for travel expenses, and Fleming drove home to Ohio.

- 12 -

After returning to Ohio, Fleming accepted an additional $1,000 from Ostrander for transportation costs, and then stopped answering Ostrander's telephone calls. At this point, Fleming was "just hoping [the matter] would go away."

By mid-August of 2005, however, Ostrander started calling Fleming with more frequency. As a result, Fleming contacted Theodore Kroczak ("Kroczak"), a police detective in Ohio whom he knew, and informed him of Ostrander's proposal. The detective, in turn, contacted a Bureau of Alcohol, Tobacco, and Firearms ("ATF") agent and a police detective in Chesapeake, and informed them of the plot. The group developed a plan in which Fleming would arrange a meeting with Ostrander, and Kroczak would pose as a "hit man," using the alias "Dominic Kavelli."

In furtherance of this plan, Fleming telephoned Ostrander on August 16, August 19, and August 23, 2005, and recorded the conversations. When the two spoke on August 16, they spoke of "pictures of [Ostrander'] kids." Fleming said this was a phrase the two of them had coined to refer to the intended killing. During the August 19 conversation, the two discussed repossession of a vehicle. Fleming testified that the "repo job" was another coded reference to the intended killing. Ostrander also told Fleming that the victim would have "some good stuff for [Fleming's] pocket," meaning that the victim would likely be carrying cash and other valuables for Fleming to take. During the August 23 conversation, the two discussed "setting up a business," which again was code for the intended killing. Ostrander assured Fleming he had "no iota of a doubt" about the plan. Fleming told Ostrander he would bring his friend, "Dominic," a.k.a. Kroczak, to Virginia as well.

Fleming and the two law enforcement officers traveled to Virginia on August 28, 2005, rented a car, and put Ohio license plates on it, so it would appear they had driven to Virginia. Fleming and Kroczak met Ostrander in a bar, and Ostrander drove them around to Ostrander's ex-wife's boyfriend's home and business in order to plan "the hit." Ostrander gave descriptions of the intended victim's vehicles and license plate numbers.

The plan involved Kroczak shooting the victim as he exited his car in the parking lot of his business, and Kroczak scaling a fence, to meet Fleming in a nearby getaway car. Ostrander planned to be with his girlfriend at the time of the shooting, to establish an alibi. The three men agreed on a price of $5,000 for the killing. Ostrander stopped at an automatic teller machine, withdrew $300, and gave it to Fleming. Ostrander stated that he would "make arrangements" to give Fleming the rest of the money "within a few weeks."

The next day, Fleming called Ostrander to inform him that they had been unable to carry out the plan, because the parking lot in which the shooting was to take place was too crowded. The three men met at a restaurant in Virginia Beach, and Fleming and Kroczak asked Ostrander where else the intended victim might be located. Ostrander gave Fleming an additional $100 towards the fee. Local police arrested Ostrander later that day.

As the majority notes, in ruling on Ostrander's double jeopardy motion, the trial court responded to the prosecutor's argument that the evidence demonstrated that Ostrander committed two distinct offenses, by asserting, "that might well be true but the indictments allege that both offenses occurred on August 28th." However, although the indictment alleges that Ostrander committed these offenses on August 28, 2005, for the purposes of a "same offense" double jeopardy analysis, neither the trial court nor we are limited to the date alleged on the indictment any more than the fact finder was in determining if the facts alleged in the indictment were proved. See Code § 19.2-226(6) (stating that an indictment shall not be deemed invalid "[f]or omitting to state, or stating imperfectly, the time at which the offense was committed when time is not the essence of the offense"). Indeed, in cases "where the date of the offense is 'not of the essence of the offense,' nor 'shown to be significant,' the Commonwealth is not required to charge that it occurred on a specific date." Raja v. Commonwealth, 40 Va. App. 710, 721, 581 S.E.2d 237, 242 (2003) (quoting Marlowe v. Commonwealth, 2 Va. App. 619, 622, 347 S.E.2d 167, 169 (1986)). In such cases, "the

- 14 -

Commonwealth may even prove that the offense occurred on a date 'other than that alleged in the charging instrument.'" Id. (quoting Stapleton v. Commonwealth, 140 Va. 475, 488, 124 S.E. 237, 242 (1924)).

Code § 18.2-29 states, in pertinent part, that "[a]ny person who commands, entreats, or otherwise attempts to persuade another person to commit a murder is guilty of a felony punishable by confinement in a state correctional facility for a term not less than five years or more than forty years." We have stated that "'invit[ing] or solicit[ing] one to commit crime, where no attempt is actually made to commit it, . . . is indictable at common law as solicitation. Solicitation, or inciting to crime, does not proceed to the point of some overt act in the commission of crime.'" Ford v. Commonwealth, 10 Va. App. 224, 226, 391 S.E.2d 603, 604 (1990) (quoting Wiseman v. Commonwealth, 143 Va. 631, 637-38, 130 S.E. 249, 251 (1925)). "Indeed, the act of solicitation may be completed before any attempt is made to commit the solicited crime[.]" Id. "[I]t is 'immaterial whether the . . . crime solicited is in fact committed since the gist of this offense is incitement.'" Id. (quoting Huffman v. Commonwealth, 222 Va. 823, 827, 284 S.E.2d 837, 840 (1981)). Indeed, "[t]he conduct constituting the act of solicitation must . . . be done with the intent 'to induce another to act.'" Id. (quoting Pedersen v. City of Richmond, 219 Va. 1061, 1067, 254 S.E.2d 95, 99 (1979)).

In this case, Ostrander spoke with Fleming on the telephone several times during July 2005, and again on August 16, 19, and 23, 2005. During the July conversations, Ostrander repeatedly asked Fleming to kill someone. In the conversations on the three dates in August, Ostrander used coded phrases to refer to the intended killing. Ostrander told Fleming that there would be "some good stuff for [Fleming's] pocket," on the intended victim's body if Fleming proceeded with the killing. He also told Fleming that he had "no iota of a doubt" about the killing proceeding as planned. The Commonwealth proffered evidence to this effect when Ostrander entered his guilty

- 15 -

plea for solicitation to commit capital murder. From this evidence, the fact finder could have found that Ostrander spoke to Fleming with the intent to "induce [Fleming] to act." Therefore, the evidence is sufficient to prove that Ostrander solicited Fleming to commit murder on August 16, 19, and 23, 2005.

Code §§ 18.2-25 and 18.2-31(2) forbid the attempt to hire a person to commit the "willful, deliberate, and premeditated killing of [another] person[.]" "An attempt to commit a crime is composed of two elements: (1) the intent to commit it; and (2) a direct, ineffectual act done toward its commission. The act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969).

On August 28, 2005, Ostrander drove Fleming and Kroczak to the intended murder victim's business, formulated a plan with the two men in which Kroczak would shoot the would-be victim in the parking lot of his business, and gave Fleming a partial payment for the killing. As far as Ostrander was concerned, he needed do nothing else for Fleming and Kroczak to commit the murder the next day. This evidence supports Ostrander's conviction for attempted capital murder for hire on August 28, 2005.

Thus, the record supports the finding that Ostrander made solicitations to commit murder on August 16, 19, and 23, 2005, and an attempted capital murder for hire on August 28, 2005. Ostrander's indictment alleged that both of the offenses occurred only on August 28, 2005. Therefore, the trial court only considered Ostrander's conduct on this day, and affirmed Ostrander's conviction, holding that solicitation to commit capital murder is not a lesser-included offense of attempted capital murder for hire and, thus, not the "same offense" for double jeopardy purposes. However, because the evidence shows that Ostrander committed these crimes on two separate and

- 16 -

distinct occasions, I would affirm Ostrander's convictions without conducting a double jeopardy analysis.  See Peake, 46 Va. App. at 40, 614 S.E.2d at 675.

Accordingly, although I find no fault with the detailed double jeopardy analysis of the majority, in my view it is unnecessary to the resolution of the issue before us and therefore I respectfully concur only in the judgment.