**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TONY LESLIE FRY,
<u>Petitioner-Appellant,</u>

v.

No. 98-8

RONALD J. ANGELONE, Director,
Virginia Department of Corrections,
<u>Respondent-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-97-654-AM)

Argued: September 24, 1998

Decided: October 26, 1998

Before MURNAGHAN, WILKINS, and LUTTIG, Circuit Judges.

_____

Dismissed by unpublished opinion. Judge Wilkins wrote the opinion,
in which Judge Murnaghan and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Michele Jill Brace, VIRGINIA CAPITAL REPRESEN-
TATION RESOURCE CENTER, Richmond, Virginia, for Appellant.
Katherine P. Baldwin, Assistant Attorney General, OFFICE OF THE
ATTORNEY GENERAL, Richmond, Virginia, for Appellee. **ON
BRIEF:** Lawrence H. Woodward, Jr., SHUTTLEWORTH, RULOFF
& GIORDANO, P.C., Virginia Beach, Virginia, for Appellant. Mark

L. Earley, Attorney General of Virginia, OFFICE OF THE ATTOR-
NEY GENERAL, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

WILKINS, Circuit Judge:

Tony Leslie Fry appeals an order of the district court dismissing his
petition for a writ of habeas corpus,[1] which challenged his Virginia
conviction for capital murder and resulting death sentence. See 28
U.S.C.A. § 2254 (West 1994 & Supp. 1998). [2] Fry principally con-
tends that the district court erred in holding several claims procedur-
ally defaulted and in denying relief on his claim of constructive denial
of counsel. For the reasons set forth below, we deny Fry's motion for
a certificate of appealability and dismiss the appeal.

I.

On February 21, 1994, Fry and Brad Hinson test-drove a Ford
Explorer with the purpose of stealing it. They had formulated a plan
to kill any salesperson that insisted on coming with them. When sales-
man Leland A. Jacobs did accompany them, they drove to a dirt road,

_____

[1] Fry named Ronald Angelone, Director of the Virginia Department of
Corrections, as Respondent in his petition. For ease of reference, we refer
to Respondent as "the Commonwealth" throughout this opinion.
[2] Because Fry's petition for a writ of habeas corpus was filed on Sep-
tember 8, 1997, subsequent to the April 24, 1996 enactment of the
Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub.
L. No. 104-132, 110 Stat. 1214, the amendments to § 2254 effected by
the AEDPA govern the resolution of this appeal. See Green v. French,
143 F.3d 865, 868 (4th Cir. 1998); see also Lindh v. Murphy, 117 S. Ct.
2059, 2067-68 (1997).

where Fry shot Jacobs in the back. As Jacobs pleaded for his life, he was shot nine more times, tied to the Explorer by his necktie, and dragged more than 600 feet. Jacobs was in such excruciating pain that he begged Fry to kill him. The last shot was then fired into Jacobs' face at close range. Jacobs eventually died from the gunshot wounds.

Following his arrest and subsequent indictment, Fry pled guilty to capital murder, robbery, and two counts of illegal use of a firearm. Following a penalty hearing, a judge of the Chesterfield County Circuit Court imposed the death penalty, finding that the crime was outrageously and wantonly vile because Fry's conduct involved an aggravated battery to the victim. See Va. Code Ann. § 19.2-264.2 (Michie 1995). Fry challenged his sentence in the Supreme Court of Virginia, arguing only that the death sentence was excessive and disproportionate to the sentence imposed in similar cases. The Supreme Court of Virginia affirmed, and the United States Supreme Court denied certiorari. See Fry v. Commonwealth, 463 S.E.2d 433 (Va. 1995), cert. denied, 517 U.S. 1110 (1996).

Fry then filed a petition for a writ of habeas corpus in state court, raising numerous claims: (I) Virginia's capital sentencing statute was unconstitutional as applied; (II) the sentencing court adopted an unconstitutional presumption in favor of death and used an unauthorized weighing system for sentencing; (III) the court unconstitutionally considered unadjudicated criminal conduct during sentencing; (IV) the Supreme Court of Virginia conducted inadequate appellate review; (V) statements made by Fry after he was taken into custody were improperly introduced into evidence during the penalty phase; (VI) Fry was denied constitutionally effective assistance of trial and appellate counsel; (VII) the Supreme Court of Virginia failed to require counsel to submit a brief in compliance with Anders v. California, 386 U.S. 738, 744 (1967); (VIII) Virginia disproportionately and discriminatorily applied the death penalty to Fry; and (IX) the death penalty is cruel and unusual punishment.

The Commonwealth moved to dismiss Fry's state petition, arguing that Claim VI was without merit and that all of the remaining issues raised were procedurally barred. Without conducting a hearing, the Supreme Court of Virginia entered an order summarily denying the petition. The court ruled that Claims I, II, III, IV, V, VII, VIII, and

3

IX were procedurally barred under the rule set forth in Slayton v. Parrigan, 205 S.E.2d 680, 682 (Va. 1974) (holding that issues that could have been but were not raised at trial or on direct appeal will not be considered in habeas review); that Claims II, IV, VII, and VIII were barred under the rule set forth in Hawks v. Cox, 175 S.E.2d 271, 274 (Va. 1970) (providing that state habeas court will not consider previously adjudicated claims); and that Claims I, V, VII, VIII, and IX were barred by the rule set forth in Peyton v. King, 169 S.E.2d 569, 571 (Va. 1969) (explaining that a voluntary guilty plea is a waiver of all nonjurisdictional challenges to the conviction). Additionally, the claim of ineffective assistance of counsel--Claim VI-- was found to be without merit.

Fry filed a federal habeas corpus petition on September 8, 1997. Concluding that Virginia satisfied the opt-in requirements of the AEDPA, and applying the more stringent review provisions of § 107 of the AEDPA, the district court dismissed the petition, reasoning that the majority of Fry's claims were procedurally defaulted and that Fry's claims of ineffective assistance of counsel lacked merit.**3**

II.

Absent cause and prejudice or a miscarriage of justice, a federal court sitting in habeas may not review a constitutional claim when a state court has declined to consider its merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). Such a rule is adequate if it is regularly or con-

_____

**3** We have not yet decided whether the provisions contained in § 107 of the AEDPA apply to Fry, who filed his state habeas petition on May 24, 1996. See Bennett v. Angelone, 92 F.3d 1336, 1342 (4th Cir. 1996) (noting that it is undecided whether the procedures established by the Commonwealth for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel satisfy the statutory opt-in requirements of § 107, which would render those provisions applicable to indigent Virginia prisoners seeking federal habeas relief from capital sentences if an initial state habeas petition was filed after July 1, 1992). And, because Fry is not entitled to relief under the relatively more lenient standards of § 2254 as amended by the AEDPA, we need not reach this issue.

sistently applied by the state court, see Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and is independent if it does not "depend[ ] on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

Fry contends that the district court erred in concluding that Claims I, II, III, and VII were procedurally defaulted. He points to the fact that the Supreme Court of Virginia cited Hawks as a basis for dismissal of these claims in its order denying his petition for state habeas corpus relief. And, he correctly explains that under Virginia law, Hawks stands for the proposition that previously adjudicated claims will not be reconsidered by a state habeas court on collateral review. See Hawks, 175 S.E.2d at 274. Thus, Fry asserts, the citation to Hawks conclusively demonstrates that these claims were decided on their merits on direct review and therefore that the district court erred in holding them to be procedurally defaulted. See Correll v. Thompson, 63 F.3d 1279, 1289 n.8 (4th Cir. 1995). On the other hand, we note that when addressing these claims, the Supreme Court of Virginia also cited Slayton. That citation would seem to warrant just the opposite conclusion--that the claims had not been decided on direct review. See Mu'Min v. Pruett, 125 F.3d 192, 197 (4th Cir.), cert. denied, 118 S. Ct. 438 (1997). However, we need not interpret the apparently contradictory application of these procedural rules because, as we explain below, the claims in question are clearly without merit. See Lambrix v. Singletary, 117 S. Ct. 1517, 1523 (1997) (explaining that concerns for judicial economy justify denying an easily resolved federal habeas claim without deciding whether the claim is procedurally defaulted when that question involves complicated state-law issues).

A.

In a Virginia capital case, the death penalty may not be imposed unless the court or jury first concludes that the prosecution has proven an aggravating factor. See Va. Code Ann.§ 19.2-264.2. Even after such a conclusion, a sentence of life imprisonment rather than death may be imposed even if there is little or no mitigating evidence. See id. Here, the relevant portion of the sentencing judge's explanation of why he imposed the death penalty was as follows:

5

The Court must find in order to impose the death penalty one of several factors, and then and only then, should it even consider mitigating circumstances .... The Court has done that. The Court has determined that your conduct was outrageously and wantonly vile, ... and that you committed an aggravated battery which is far beyond battery as we know. [Eleven] bullets, and in a person's body. The Court has considered the mitigation. I believe as even your counsel pointed out, that Dr. Noles and Dr. Bright have gone beyond the call. But this Court cannot find that the statutory mitigation, the nonstatutory mitigation, or the mental mitigation is sufficient for this Court not to impose the penalty of death. It's the opinion of this Court, and it is the order of this Court that you be sentenced to death in accordance with the law of this State.

J.A. 55-56 (emphasis added). Fry contends that the emphasized words demonstrate that once the sentencing judge found the existence of an aggravating factor, he shifted the burden to Fry to prove that the death penalty should not be imposed. We conclude, however, that a reasonable jurist could interpret the judge's comments to reflect only that he considered and weighed all of the evidence in this case and determined, despite the presence of some mitigating evidence, that imposition of the death penalty was appropriate. See 28 U.S.C.A. § 2254(d)(1); Green v. French, 143 F.3d 865, 870 (4th Cir. 1998) (discussing application of 28 U.S.C.A. § 2254(d)(1)). Accordingly, we cannot grant relief on this claim.

B.

Fry next maintains that his constitutional rights were violated when the Supreme Court of Virginia conducted an inadequate mandatory proportionality review of his sentence by (1) failing to consider both the crime and the defendant; (2) focusing on whether Fry was eligible for the death penalty, rather than on whether the death penalty was the appropriate sentence; (3) failing to provide notice of the characteristics it considered for the proportionality review; (4) failing to review Fry's sentence with great rigor; and (5) failing to consider all of the evidence. These claims are not cognizable in a federal habeas corpus proceeding. See Pulley v. Harris, 465 U.S. 37, 50-51 (1984);

6

Buchanan v. Angelone, 103 F.3d 344, 351 (4th Cir. 1996), aff'd, 118 S. Ct. 757 (1998).

C.

Fry also contends that the Supreme Court of Virginia failed to require counsel to submit a brief in compliance with Anders v. California, 386 U.S. 738, 744 (1967). Anders outlines the circumstances under which an appellate court may grant appointed counsel's motion to withdraw from representation of a defendant who desires to appeal. The following requirements must be met: Counsel, having determined that an appeal would be frivolous, must submit to his client and the court a brief addressing all issues that might arguably give rise to an appeal; the defendant must be given an opportunity to raise any issues of his choosing; and the court must determine, after a full review of the record, that an appeal would be wholly frivolous. See id. The Anders brief serves the twin functions of "provid[ing] the appellate courts with a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeals to the best of their ability" and aiding the courts"in making the critical determination whether the appeal is indeed so frivolous that counsel should be permitted to withdraw." McCoy v. Court of Appeals, 486 U.S. 429, 439 (1988).

Here, of course, Fry's counsel did not move to withdraw, but in fact submitted a brief addressing what counsel considered his strongest position; counsel also presented an oral argument on Fry's behalf. Therefore, Fry's characterization of this claim as presenting an Anders issue is incorrect, and we cannot say that the state-court decision to deny relief on this claim was unreasonable. See 28 U.S.C.A. § 2254(d)(1). That is not to say that Fry is foreclosed from asserting a claim of ineffective assistance of appellate counsel. Indeed, Fry advances such a claim, and we address it below in Section III.

D.

Fry further maintains, without offering any meaningful support, that Virginia disproportionately and discriminatorily applied the death penalty to him based on his gender and indigency in violation of his constitutional rights. We cannot conclude, however, that the state-

7

court rejection of this claim was unreasonable. <u>See</u> 28 U.S.C.A. § 2254(d)(1).

## III.

Fry also contends that he was constructively denied assistance of appellate counsel when the only argument that appellate counsel advanced on his behalf was that the death sentence was excessive and disproportionate to the sentence imposed in similar cases.

Fry is constitutionally entitled to the effective assistance of counsel on direct appeal. <u>See Evitts v. Lucey</u>, 469 U.S. 387, 396 (1985). Accordingly, he is entitled to habeas relief if he can establish that appellate counsel's performance "fell below an objective standard of reasonableness" and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984). When a defendant suffers an actual or constructive complete deprivation of counsel during the appellate stage, the defendant need not demonstrate that he was prejudiced thereby; rather, prejudice is presumed. <u>See Penson v. Ohio</u>, 488 U.S. 75, 88 (1988).

Although it is undisputed that Fry's counsel argued to the Supreme Court of Virginia that Fry's death sentence should be overturned because it was excessive and disproportionate to the sentence imposed in similar cases, Fry claims those actions did not advance his "appeal," but at most only assisted him in the separate process of statutory mandatory review.**4** Fry contends, therefore, that when counsel advanced the disproportionality argument without arguing any issues that would not have been automatically reviewable, Fry was completely denied assistance of appellate counsel, and, considering the then-existing Supreme Court precedent, no reasonable jurist could have found to the contrary.

Fry's argument notwithstanding, counsel does not render ineffective assistance by making a reasonable strategic choice to appeal particular errors and not to appeal other errors. <u>See Jones v. Barnes</u>, 463 U.S. 745, 751 (1983); <u>see also id.</u> (noting "the importance of winnowing out weaker arguments on appeal and focusing on one central issue

_____

**4** Indeed, Fry argues that counsel's argument was of no assistance because the Supreme Court of Virginia was already bound to review the issue that counsel "raised."

8

if possible"). Although Fry maintains that <u>Jones</u> does not apply because the argument counsel advanced on his behalf was not technically an "appellate" argument, he offers no Supreme Court authority that would foreclose the application of the principles underlying <u>Jones</u> to these facts. Accordingly, we conclude that in the absence of controlling Supreme Court precedent, a reasonable jurist could decide that the presentation by Fry's counsel to the Supreme Court of Virginia of only the disproportionality issue did not constructively deprive Fry of assistance of appellate counsel. <u>See Green</u>, 143 F.3d at 870 (explaining that analysis of whether state-court ruling is contrary to, or an unreasonable application of, federal law depends upon an analysis of relevant Supreme Court precedent). Accordingly, the state-court decision denying relief on this claim was neither unreasonable nor contrary to law. <u>See</u> 28 U.S.C.A.§ 2254(d)(1).**5**

IV.

Following the dismissal of his federal habeas corpus petition, Fry moved this court for a certificate of appealability. <u>See</u> 28 U.S.C.A. § 2253(c)(2) (West Supp. 1998). We conclude that Fry has failed to make "a `substantial showing of the denial of a constitutional right.'" <u>Murphy v. Netherland</u>, 116 F.3d 97, 101 (4th Cir.) (quoting § 2253(c)(2)), <u>cert. denied</u>, 118 S. Ct. 26 (1997) (emphasis omitted). Therefore, we dismiss Fry's appeal.

<u>DISMISSED</u>

_____

**5** Fry also argues that the district court erred in reviewing his nondefaulted claims under the standards of review set forth in § 2254(d)(1) as amended by the AEDPA. He maintains that because the state court ruled on those claims in a summary order, there was no"adjudicat[ion] on the merits" of those claims within the meaning of§ 2254(d). However, this court recently has held that even when the state court has disposed of claims in a summary order, a writ may not issue unless, "after an independent review of the applicable law," we conclude that the resolution of the "claims was `contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.'" <u>Wright v. Angelone</u> , 151 F.3d 151, 157 (4th Cir. 1998) (quoting 28 U.S.C.A. § 2254(d)); <u>see Cardwell v. Greene</u>, 152 F.3d 331, 339 (4th Cir. 1998).

9