# VIRGINIA:

*In the Court of Appeals of Virginia on* **Tuesday** *the* **21st** *day of* **October, 2025**.

Isaiah Robert Moorman,                                                                                    Appellant,

 against                        Record No. 1889-23-1
                       Circuit Court Nos. CR22000780-00 through CR22000782-00,
                       CR22000795-00, CR22000796-00 and CR22001376-00

Commonwealth of Virginia,                                                                               Appellee.

## Upon a Petition for Rehearing En Banc

Before Chief Judge Decker, Judges Beales, O'Brien, AtLee, Malveaux, Athey, Ortiz, Causey, Friedman, Chaney, Raphael, Lorish, Callins, White, Frucci and Bernhard

On October 7, 2025, the appellee, by the Attorney General of Virginia, filed a petition requesting that the Court set aside the judgment rendered on September 23, 2025, and grant a rehearing en banc on the issue(s) raised in the petition.

On consideration whereof and pursuant to Rule 5A:35 of the Rules of the Supreme Court of Virginia, the Court grants the petition for rehearing en banc and reinstates the appeal of those issues on the docket. The Court stays the mandate previously entered in this case pending the Court's en banc decision.

The parties must file briefs in compliance with the schedule set forth in Rule 5A:35(b).

A Copy,

Teste:

A. John Vollino, Clerk

*original order signed by a deputy clerk of the*
By:   *Court of Appeals of Virginia at the direction*
       *of the Court*

Deputy Clerk

Present:    Judges Causey, Chaney and Callins

ISAIAH ROBERT MOORMAN

v.        Record No. 1889-23-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE DORIS HENDERSON CAUSEY
SEPTEMBER 23, 2025

UPON A REHEARING

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Matthew A. Glassman, Judge

(Kelsey Bulger, Deputy Appellate Counsel; Virginia Indigent
Defense Commission, on briefs), for appellant.

(Jason S. Miyares, Attorney General; Timothy J. Huffstutter,
Assistant Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court for the City of Suffolk convicted Isaiah Moorman

of first-degree murder, robbery, use of a firearm in the commission of robbery, aggravated

murder, use of a firearm in the commission of aggravated murder, and discharging a firearm

within an occupied building.  Moorman was sentenced to two life sentences plus 68 years, with

60 years suspended.

At sentencing, the Commonwealth requested that the first-degree murder conviction be

merged into the aggravated murder conviction, but the circuit court—sua sponte—raised

objections to the motion, prompting the Commonwealth to withdraw it.  The circuit court then

sentenced Moorman to life in prison for each offense and ran the sentences concurrently.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

On appeal, Moorman argues that the circuit court erred: (I) in denying the motions to strike one of the murder charges because he should not have been convicted of both aggravated murder and first-degree murder; (II) in admitting the text message over his objection, as the message was inadmissible hearsay; and (III) in denying the jury instruction requested by the defense regarding malice. The Commonwealth concedes error on the first assignment of error but argues that the argument is either waived or that he invited the error. We hold that the doctrine of invited error does not apply. We hold that Moorman's convictions for both first-degree murder and aggravated murder violate the Double Jeopardy Clauses of the United States Constitution and the Constitution of the Commonwealth of Virginia; therefore, we reverse Moorman's first-degree murder conviction. We affirm Moorman's conviction for aggravated murder.[1]

## BACKGROUND

In December of 2021, Consuela Blount was living in Suffolk, Virginia with nine other family members, including her two adult children: Tre'Von Lewis and Shaniya Blount. Isaiah Moorman was a friend of Tre'Von Lewis. On December 14, Moorman was visiting with Lewis at the home when a "bang" was heard. Shaniya identified the noise as sounding like a gunshot. Shaniya was on her way to investigate the noise when she heard a second "bang." Shaniya went to Lewis' room, finding Lewis slumped over in a chair with a visible gunshot wound to the head. Shaniya saw Moorman kick an air conditioning unit out of the window, grab a red safe, throw it

---

[1] Upon consideration of the Commonwealth's petition for rehearing, the panel determined that the opinion would be edited and reissued. The panel determined that oral argument was unnecessary because the dispositive issue has been authoritatively decided and appellant has not argued that the case law should be overturned, extended, modified or reversed. Code § 17.1-403(ii)(b); Rule 5A:27 (b).

out the window, and then jump out after it. Shaniya then ran down the hall to tell Consuela that Lewis had been shot by Moorman.

An autopsy revealed that Lewis was killed by a single gunshot wound to the head. After an investigation of the house and surrounding area, police discovered a firearm in Lewis' room and an orange and black jacket on a path between Lewis' residence and Moorman's parents' house. Moorman was known to be living with his parents at the time. Inside the jacket was $1,120 in cash. DNA testing of the jacket could not eliminate Moorman as a suspect.

Police located Moorman at his parents' residence, where officers recovered a second firearm. Testing indicated that this gun fired the bullet that killed Lewis. Based on DNA testing, Moorman could not be eliminated as the operator of the firearm that killed Lewis.

When taken into custody and questioned by Detective Patton, Moorman denied ever being at Lewis' residence or any knowledge of the shooting. Upon further questioning, Moorman admitted that he had been at the residence but claimed that a man known as "Keem" was the person who shot Lewis. When Patton advised Moorman that he was seen leaving the residence at the time of the shooting, Moorman admitted that he was there and in fact shot Lewis. Moorman claimed he shot Lewis in self-defense, accounting for the first and second shots that were heard by Shaniya.

I. <u>Trial</u>

The Commonwealth introduced into evidence a text exchange between Moorman and an individual named "Pablo." From Pablo to Moorman: "Naw. I'm broke right now. I don't even have $624 for my car loan but I got to find a way to get it in 6 days." Moorman responds, "Damn ight loxkk ima hit dis lixkk [M]onday nd get us right." Pablo asked what Moorman wanted, and Moorman said, "20 bandz and a koupke Pz." In his objection, Moorman argued that the text exchange was inadmissible hearsay, to which the Commonwealth responded that the cell

- 3 -

phone was a neutral device which was used to merely print out a text exchange; additionally, it argued that the message was necessary to provide context to Moorman's response. The circuit court overruled Moorman's objection, ruling that the initial message from Pablo was not being offered to prove the truth of the matter asserted and that the message provided context to Moorman's response.

At the conclusion of the case, Moorman—having failed to file a pretrial motion to dismiss on double jeopardy grounds—argued that the charge of first-degree murder "should be subsumed in the aggravated" murder charge. When the circuit court asked if one offense was a common law offense and the other statutory, Moorman responded that first-degree murder could be either a common law offense or a statutory offense. Moorman also argued that the robbery causing death charge should be struck because the death was not during the robbery. Moorman conceded that the Commonwealth had made a prima facie case of the other charges. The prosecution asserted that the murder charges were proper and both could go to the jury.

II. Motion to Strike

At the close of the Commonwealth's case, Moorman moved to strike the evidence, relating to "both aggravated murder and first-degree both going to the jury." Moorman's counsel stated, "the first-degree should be subsumed in the aggravated," and "essentially the indictments are duplicates." There was an exchange between Moorman's counsel and the circuit court judge regarding whether one was a common law and the other a statutory crime; from this, the Commonwealth stated, "it looks like the first-degree murder has a malicious requirement."

The circuit court then partially granted the motion to strike—overruling the motion to strike aggravated murder—saying, "I don't think you can have two versions of statutory murder go to the jury because it's just not possible. You have one -- one body." As to the first-degree murder charge, the court struck language from the indictment stating, "or in the commission or

- 4 -

attempted commission of robbery," prompting Moorman's counsel to respond, "I hope my argument during the motion to strike was having done that, *it's now a lesser included of aggravated.* That was my objection." (Emphasis added).

Moorman testified in his defense that on December 14, 2021, he first went to Lewis' house around 11:30 a.m. with Rakeem "Keem" Daniels. After approximately an hour, Lewis said he had something to do, and Moorman and Daniels left. Moorman stated that he walked to Lewis' residence five or six times during the day because he was seeing if Lewis was home. Moorman testified that he and Lewis smoked marijuana and wrote music for approximately two hours. While having a conversation about social plans, Moorman stated that he warned Lewis about Daniels, telling Lewis that Daniels may try to rob him. Moorman testified that Lewis had a gun within arm's reach and Lewis reacted poorly to Moorman's warning about Daniels. Moorman stated that Lewis started acting "paranoid" because of the marijuana and when Moorman warned Lewis about Daniels, Lewis responded that Moorman was trying to set him up. Moorman testified that Lewis began ranting and getting very agitated. Moorman stated that during the "rant," Lewis said, "fuck this," and went to grab his gun. Moorman testified that he stood up, drew his firearm from his waist, closed his eyes, and fired. Lewis slumped over. Moorman took Lewis' gun from his hand and placed it on the suitcase. Startled by Shaniya's "banging" on the door and "yelling," Moorman escaped the room by kicking out the window air conditioning unit and jumping out of the window.

III. Renewed Motion to Strike

After Moorman's close of evidence, he renewed his motion to strike, stating that the renewed motion "simply takes into account now the Court's heard all the evidence, which doesn't negate the Commonwealth's prima facie case. So, to the extent that we have a motion to renew, that's it." The court denied the motion to strike.

IV. Ruling on the Motion to Strike and the Renewed Motion to Strike

Rather than filing a pretrial motion to dismiss one of the indictments on double jeopardy grounds, Moorman raised an objection during his first motion to strike, which the circuit court addressed after extensive argument from both defense counsel and the Commonwealth. At the close of evidence, Moorman renewed his motion to strike without providing any additional argument beyond his initial claim. The circuit court ultimately ruled that both indictments could be presented to the jury—one for common law first-degree murder and the other for statutory aggravated murder.

V. Close of Trial

At the beginning of proceedings the next day, the court noted for the record that counsel had been working with the court "in the back" on jury instructions. The court stated that it had refused one instruction requested by Moorman. The refused instruction was

> once the Commonwealth has proved that there was an unlawful killing, then you may but are not required to infer that there was malice, and that the act was murder in the second degree, unless from all the evidence you have a reasonable doubt as to whether malice was -- whether malice existed.

The court stated on the record that because of the number of murder counts, the requested instruction would be confusing to the jury. When the court requested Moorman to elaborate or comment on the declined instruction, he declined, stating that the "instruction speaks for itself." The jury subsequently convicted Moorman of all charges. This appeal follows.

ANALYSIS

Moorman alleges the circuit court erred (I) in denying the motions to strike one of the murder charges where Moorman should not have been convicted of both aggravated murder and first-degree murder, (II) in admitting the text message over Moorman's objection, as it was inadmissible hearsay, and (III) in denying the jury instruction requested by the defense regarding

- 6 -

malice.  We hold that the circuit court committed reversible error by convicting Moorman of both aggravated murder and first-degree murder, violating his state and federal constitutional rights against double jeopardy.

I. The circuit court denying Moorman's motions to strike either of his murder charges, resulting in two murder convictions, is a violation of the Double Jeopardy Clauses of the United States Constitution and the Constitution of the Commonwealth of Virginia.

This Court reviews de novo whether "multiple punishments have been imposed for the same offense in violation of the double jeopardy clause." *Commonwealth v. Gregg*, 295 Va. 293, 296 (2018).  Where a defendant is charged with multiple crimes in the same trial, "the double jeopardy defense does not apply unless: (a) the defendant is twice punished for one criminal act, and (b) the two punishments are either for the same crime or one punishment is for a crime which is a lesser included offense of the other." *Severance v. Commonwealth*, 295 Va. 564, 572 (2018) (emphasis omitted).  When reviewing a double jeopardy claim, or a claim based on statutory interpretation, this Court conducts a de novo review.  *Davis v. Commonwealth*, 57 Va. App. 446, 455 (2011).

The Double Jeopardy Clauses of the Constitution of the United States and the Constitution of the Commonwealth of Virginia protect "against multiple punishments for the same offense." *Ostrander v. Commonwealth*, 51 Va. App. 386, 392 (2008).  Where the accused is tried in a single trial, the Double Jeopardy Clause assures "that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *West v. Dir. of the Dep't of Corr.*, 273 Va. 56, 63 (2007).  "[A] lesser included and a greater offense are the 'same,' and conviction and punishment for both offends this constitutional guarantee [of the Double Jeopardy Clause]." *Rea v. Commonwealth*, 14 Va. App. 940, 945 (1992).  When the accused "is improperly convicted for a lesser included offense, the proper remedy is to vacate both the conviction and sentence on the included offense, leaving the conviction and sentence on

- 7 -

the greater offense intact." *Brown v. Commonwealth*, 222 Va. 111, 116 (1981) (quoting *United States v. Buckley*, 586 F.2d 498, 505 (5th Cir. 1978)).

Virginia appellate courts have applied these principles consistently. In *Brown*, our Supreme Court vacated the appellant's lesser-included assault and battery conviction where he had been found guilty of the greater offense, unlawful wounding. *Id.* In *Buchanan v. Commonwealth*, 238 Va. 389, 414-15 (1989), the appellant was convicted of four counts of first-degree murder and one count of capital murder for the killing of four people. There, the Commonwealth conceded that the appellant had "one too many first[-]degree murder convictions," and the Supreme Court vacated the first-degree murder conviction that related to the same decedent as the capital murder conviction. *Id.* at 415. Finally, in *Rea*, our Court vacated the appellant's convictions and sentences for three counts of first-degree murder where he had also been convicted of three counts of capital murder for the same three decedents. 14 Va. App. at 945.

One of Moorman's two convictions is for a crime that is a lesser-included offense of the other. The punishments were for both the greater offense, aggravated murder, and the lesser-included offense, first-degree murder. Code § 18.2-31 was amended in 2021 to replace "capital murder" with "aggravated murder." *See* 2021 Va. Acts Spec. Sess. I chs. 344, 345. This Court has previously determined that first-degree murder is a lesser-included offense of aggravated murder. *See Rea*, 14 Va. App. at 945 (vacating the appellant's three first-degree murder convictions where he had been convicted of three counts of capital murder for the same decedents). Since Moorman was convicted of aggravated murder and first-degree murder, the lesser-included conviction must be vacated. Consequently, Moorman's conviction and sentence for first-degree murder must be vacated.

The Commonwealth argues that Moorman waived his constitutional rights. The Commonwealth argues that Code § 19.2-266.2(A) is controlling: "Defense motions or objections seeking . . . (ii) dismissal of a warrant, information, or indictment or any count or charge thereof on the ground that: . . . (b) the defendant would be twice placed in jeopardy in violation of" the Fifth Amendment of the Constitution of the United States or Article I, Section 8 of the Constitution of Virginia "shall be raised by motion or objection." And Code § 19.2-266.2(B) requires such a motion to be in writing and filed "not later than seven days before trial in circuit court[.]" *See also Williams v. Commonwealth*, 57 Va. App. 750, 768 (2011). Moorman conceded that he did not file a written motion to dismiss on double jeopardy grounds.

The Commonwealth further argues that Moorman invited the error that he now seeks to challenge. In *Rompalo v. Commonwealth*, 72 Va. App. 147, 155 (2020), we determined that, "a motion to strike the evidence presented after the Commonwealth's case-in-chief is a separate and distinct motion from a motion to strike all the evidence . . . made after the defendant has introduced evidence on his own behalf." Where a defendant presents evidence on his own behalf and fails to renew a motion to strike, the issue is not preserved. In *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009), our Supreme Court affirmed that assault and battery of a law enforcement officer was a lesser-included offense of attempted capital murder of a law enforcement officer. The Commonwealth argues that *Rowe* applies here because at the circuit court, the defendant in *Rowe* argued that assault and battery of a law enforcement officer was a lesser-included offense of attempted capital murder of a law enforcement officer, but on appeal argued that the assault was not a lesser-included offense, thus not preserving the issue. *Id.* at 503. Thus, the nature of the non-preservation, here, is analogous and applicable to the case at bar.

Additionally, the Commonwealth argues that we should hold that Moorman invited the error by not preserving the issue, *see id.*; *Alford v. Commonwealth*, 56 Va. App. 706, 709 (2010);

- 9 -

however, a failure to preserve an issue does not equate to inviting an error. We have said that "[t]he invited error doctrine allows an appellate court to consider errors of law as waived when a party 'attempt[s] to take advantage of the situation created by his own wrong.'" *Nelson v. Commonwealth*, 71 Va. App. 397, 404 (2020) (second alteration in original) (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006)). Moorman always maintained that he should not be found guilty of first-degree murder *and* aggravated murder, even explicitly stating, "[first-degree murder] is not a lesser included of aggravated. That was my objection." This objection is not one based on any presented evidence, but rather one of law, so there was no necessity to renew this motion at the conclusion of evidence; unlike the motions referenced by the Commonwealth from *Rowe*. There was never a point of hiding the ball or switching hands. Moorman's objections as to double jeopardy were consistent. While Moorman's objections were proper, we hold that he did not preserve them for appeal as he did not file a written notice to appeal on double jeopardy grounds. Code § 19.2-266.2(B); *Williams*, 57 Va. App. at 768.

Applying the ends of justice exception, Moorman meets the two requirements: 1) the trial court erred; and 2) Moorman was denied an essential right. *See Brittle v. Commonwealth*, 54 Va. App. 505, 513 (2009). The circuit court erred in convicting and sentencing Moorman for both aggravated murder and first-degree murder of the same victim. Moreover, Moorman was denied an essential constitutional right, guaranteed by our state and federal constitutions. The error here was "clear, substantial and material" as mandated by our caselaw. *West v. Commonwealth*, 43 Va. App. 327, 338 (2004) (the lens by which our Court reviews applications for the ends of justice exception). The two convictions and sentences violated Moorman's protections under the Double Jeopardy Clauses of both the Constitution of the United States and the Constitution of the Commonwealth of Virginia. Moorman has a constitutional guarantee that

- 10 -

trial courts "do[] not exceed [their] legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

Therefore, we apply the ends of justice exception to correct the error and reverse and vacate Moorman's conviction for first-degree murder. "The error in this case is so contrary to fundamental notions of justice that to permit it to pass uncorrected would seriously undermine the integrity of our judicial system." *Brown v. Commonwealth*, 8 Va. App. 126, 133 (1989). Few things rise to the high threshold for application of the ends of justice exception. However, allowing a man's state and federal constitutional rights against double jeopardy to be violated and pass uncorrected would undoubtedly be error that "undermine[s] the integrity of our judicial system." *Id.*

II. <u>Best and narrowest ground doctrine addresses the alleged errors of admitting Moorman's text message and in denying the jury instruction requested by the defense.</u>

Our Supreme Court has often stated, "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). We hold that if the circuit court erred, the error was harmless as a matter of law—as to the alleged error of admitting Moorman's text messages—and Moorman has waived the issue—as to denying the jury instruction requested by the defense. *Commonwealth v. White*, 293 Va. 411, 418 (2017). The harmless-error doctrine is a legislative mandate[2] and check on the "powers of this court to reverse the judgment of the trial court." *Walker v. Commonwealth*, 144 Va. 648, 652 (1926). The harmless-error doctrine is favored by our courts, as it "demands . . . common sense."

---

[2] "Harmless error is a legislative mandate, which has been part of our statutory law since the early 1900s, and limits the adjudicatory power of Virginia appellate courts." *White*, 293 Va. at 419.

*Commonwealth v. Proffitt*, 292 Va. 626, 641 (2016) (quoting *Oliver v. Commonwealth*, 151 Va. 533, 541 (1928)).  It is the imperative of a "reviewing court to consider the trial record as a whole and to ignore errors that are harmless" lest they "retreat [] from their responsibilities, becoming instead 'impregnable citadels of technicality.'" *United States v. Hasting*, 461 U.S. 499, 509 (1983) (alteration in original) (quoting R. Traynor, The Riddle of Harmless Error 14 (1970)).

As to the alleged error of admitting Moorman's text message, the circuit court's authority as to whether to admit evidence is within the broad discretion of the circuit court and will not be disturbed on appeal absent an abuse of discretion.  *Bynum v. Commonwealth*, 57 Va. App. 487, 490 (2011).  Here, the circuit court at most committed harmless evidentiary error as there was other "overwhelming" evidence of guilt.  *Salahuddin v. Commonwealth*, 67 Va. App. 190, 212 (2017).  In denying the jury instruction requested by the defense regarding malice, the issue is procedurally waived because the basis of Moorman's objection to the court's refusal to give the requested instruction is not included in the transcript.  Rule 5A:18; *see Smith v. Commonwealth*, No. 1235-12-3, slip op. at 1-3, 2013 Va. App. LEXIS 278, at *2-4 (Oct. 8, 2013).

## CONCLUSION

Accordingly, we hold that Moorman's conviction for first-degree murder constituted a violation of Moorman's rights against double jeopardy guaranteed by the Constitution of the United States and the Constitution of the Commonwealth of Virginia.  We reverse and vacate the first-degree murder conviction.  We affirm Moorman's other convictions, including for aggravated murder.

*Affirmed in part and reversed in part*.

Callins, J., dissenting.

My colleagues in the majority today cite to *West v. Commonwealth*, 43 Va. App. 327 (2004), as mandating the application of the ends of justice exception to permit our review of Moorman's Double Jeopardy Clause challenge. *See supra* at 10. But *West* stands for the opposite proposition. Indeed, in *West*, we "assum[ed], without deciding, that [the] appellant's right against double jeopardy was violated," and nonetheless held that this "alleged fact d[id] not create an ends of justice situation such that [the] appellant did not have to preserve the issue for appeal." *West*, 43 Va. App. at 339. We stated unequivocally that "[e]rror alone, *even a violation of constitutional principles*, is not sufficient to warrant application of the ends of justice exception to Rule 5A:18." *Id.* (emphasis added). By invoking the ends of justice exception based on the Double Jeopardy Clause violation alone, the majority's decision violates the interpanel accord doctrine. Therefore, I respectfully dissent.

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* **Tuesday** *the* **23** *day of* **September, 2025**.

Isaiah Robert Moorman, Appellant,

against        Record No. 1889-23-1
Circuit Court Nos. CR22000780-00 through CR22000782-00,
CR22000795-00, CR22000796-00 and CR22001376-00

Commonwealth of Virginia, Appellee.

Upon a Petition for Rehearing

Before Judges Causey, Chaney and Callins

On July 1, 2025 came appellee, by the Attorney General of Virginia, and filed a petition praying that the Court set aside the judgment rendered herein on June 17, 2025, and grant a rehearing thereof.

On consideration whereof, the petition for rehearing is granted, the opinion rendered on June 17, 2025 is withdrawn, the mandate entered on that date is vacated, and this appeal will be reconsidered by the panel of judges that originally considered the matter.

A Copy,

Teste:

A. John Vollino, Clerk

By:    *original order signed by a deputy clerk of the*
*Court of Appeals of Virginia at the direction*
*of the Court*

Deputy Clerk

COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Chaney and Callins
Argued at Hampton, Virginia

ISAIAH ROBERT MOORMAN

MEMORANDUM OPINION[*] BY
v.     Record No. 1889-23-1     JUDGE DORIS HENDERSON CAUSEY
JUNE 17, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Matthew A. Glassman, Judge

Kelsey Bulger, Deputy Appellate Counsel (Virginia Indigent
Defense Commission, on briefs), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court for the City of Suffolk convicted Isaiah Moorman

of first-degree murder, robbery, use of a firearm in the commission of robbery, aggravated

murder, use of a firearm in the commission of aggravated murder, and discharging a firearm

within an occupied building. Moorman was sentenced to two life sentences plus 68 years, with

60 years suspended.

At sentencing, the Commonwealth requested that the first-degree murder conviction be

merged into the aggravated murder conviction, but the circuit court—sua sponte—raised

objections to the motion, prompting the Commonwealth to withdraw it. The circuit court then

sentenced Moorman to life in prison for each offense and ran the sentences concurrently.

On appeal, Moorman argues that the circuit court erred: (I) in denying the motions to

strike one of the murder charges because he should not have been convicted of both aggravated

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

murder and first-degree murder; (II) in admitting the text message over his objection, as the message was inadmissible hearsay; and (III) in denying the jury instruction requested by the defense regarding malice. The Commonwealth concedes error on the first assignment of error but argues that the argument is either waived or that he invited the error. We hold that the doctrine of invited error does not apply. We hold that Moorman's convictions for both first-degree murder and aggravated murder violate the Double Jeopardy Clauses of the United States Constitution and the Constitution of the Commonwealth of Virginia; therefore, we reverse Moorman's first-degree murder conviction. We affirm Moorman's conviction for aggravated murder.

BACKGROUND

In December of 2021, Consuela Blount was living in Suffolk, Virginia with nine other family members, including her two adult children: Tre'Von Lewis and Shaniya Blount. Isaiah Moorman was a friend of Tre'Von Lewis. On December 14, Moorman was visiting with Lewis at the home when a "bang" was heard. Shaniya identified the noise as sounding like a gunshot. Shaniya was on her way to investigate the noise when she heard a second "bang." Shaniya went to Lewis' room, finding Lewis slumped over in a chair with a visible gunshot wound to the head. Shaniya saw Moorman kick an air conditioning unit out of the window, grab a red safe, throw it out the window, and then jump out after it. Shaniya then ran down the hall to tell Consuela that Lewis had been shot by Moorman.

An autopsy revealed that Lewis was killed by a single gunshot wound to the head. After an investigation of the house and surrounding area, police discovered a firearm in Lewis' room and an orange and black jacket on a path between Lewis' residence and Moorman's parents' house. Moorman was known to be living with his parents at the time. Inside the jacket was $1,120 in cash. DNA testing of the jacket could not eliminate Moorman as a suspect.

- 2 -

Police located Moorman at his parents' residence, where officers recovered a second firearm. Testing indicated that this gun fired the bullet that killed Lewis. Based on DNA testing, Moorman could not be eliminated as the operator of the firearm that killed Lewis.

When taken into custody and questioned by Detective Patton, Moorman denied ever being at Lewis' residence or any knowledge of the shooting. Upon further questioning, Moorman admitted that he had been at the residence but claimed that a man known as "Keem" was the person who shot Lewis. When Patton advised Moorman that he was seen leaving the residence at the time of the shooting, Moorman admitted that he was there and in fact shot Lewis. Moorman claimed he shot Lewis in self-defense, accounting for the first and second shots that were heard by Shaniya.

I. Trial

The Commonwealth introduced into evidence a text exchange between Moorman and an individual named "Pablo." From Pablo to Moorman: "Naw. I'm broke right now. I don't even have $624 for my car loan but I got to find a way to get it in 6 days." Moorman responds, "Damn ight loxkk ima hit dis lixkk [M]onday nd get us right." Pablo asked what Moorman wanted, and Moorman said, "20 bandz and a koupke Pz." In his objection, Moorman argued that the text exchange was inadmissible hearsay, to which the Commonwealth responded that the cell phone was a neutral device which was used to merely print out a text exchange; additionally, it argued that the message was necessary to provide context to Moorman's response. The circuit court overruled Moorman's objection, ruling that the initial message from Pablo was not being offered to prove the truth of the matter asserted and that the message provided context to Moorman's response.

At the conclusion of the case, Moorman—having failed to file a pretrial motion to dismiss on double jeopardy grounds—argued that the charge of first-degree murder "should be

subsumed in the aggravated" murder charge. When the circuit court asked if one offense was a common law offense and the other statutory, Moorman responded that first-degree murder could be either a common law offense or a statutory offense. Moorman also argued that the robbery causing death charge should be struck because the death was not during the robbery. Moorman conceded that the Commonwealth had made a prima facie case of the other charges. The prosecution asserted that the murder charges were proper and both could go to the jury.

## II. Motion to Strike

At the close of the Commonwealth's case, Moorman moved to strike the evidence, relating to "both aggravated murder and first-degree both going to the jury." Moorman's counsel stated, "the first-degree should be subsumed in the aggravated," and "essentially the indictments are duplicates." There was an exchange between Moorman's counsel and the circuit court judge regarding whether one was a common law and the other a statutory crime; from this, the Commonwealth stated, "it looks like the first-degree murder has a malicious requirement."

The circuit court then partially granted the motion to strike—overruling the motion to strike aggravated murder—saying, "I don't think you can have two versions of statutory murder go to the jury because it's just not possible. You have one -- one body." As to the first-degree murder charge, the court struck language from the indictment stating, "or in the commission or attempted commission of robbery," prompting Moorman's counsel to respond, "I hope my argument during the motion to strike was having done that, *it's now a lesser included of aggravated*. That was my objection." (Emphasis added).

Moorman testified in his defense that on December 14, 2021, he first went to Lewis' house around 11:30 a.m. with Rakeem "Keem" Daniels. After approximately an hour, Lewis said he had something to do, and Moorman and Daniels left. Moorman stated that he walked to Lewis' residence five or six times during the day because he was seeing if Lewis was home.

- 4 -

Moorman testified that he and Lewis smoked marijuana and wrote music for approximately two hours. While having a conversation about social plans, Moorman stated that he warned Lewis about Daniels, telling Lewis that Daniels may try to rob him. Moorman testified that Lewis had a gun within arm's reach and Lewis reacted poorly to Moorman's warning about Daniels. Moorman stated that Lewis started acting "paranoid" because of the marijuana and when Moorman warned Lewis about Daniels, Lewis responded that Moorman was trying to set him up. Moorman testified that Lewis began ranting and getting very agitated. Moorman stated that during the "rant," Lewis said, "fuck this," and went to grab his gun. Moorman testified that he stood up, drew his firearm from his waist, closed his eyes, and fired. Lewis slumped over. Moorman took Lewis' gun from his hand and placed it on the suitcase. Startled by Shaniya's "banging" on the door and "yelling," Moorman escaped the room by kicking out the window air conditioning unit and jumping out of the window.

### III. Renewed Motion to Strike

After Moorman's close of evidence, he renewed his motion to strike, stating that the renewed motion "simply takes into account now the Court's heard all the evidence, which doesn't negate the Commonwealth's prima facie case. So, to the extent that we have a motion to renew, that's it." The court denied the motion to strike.

### IV. Ruling on the Motion to Strike and the Renewed Motion to Strike

Rather than filing a pretrial motion to dismiss one of the indictments on double jeopardy grounds, Moorman raised an objection during his first motion to strike, which the circuit court addressed after extensive argument from both defense counsel and the Commonwealth. At the close of evidence, Moorman renewed his motion to strike without providing any additional argument beyond his initial claim. The circuit court ultimately ruled that both indictments could

be presented to the jury—one for common law first-degree murder and the other for statutory aggravated murder.

V. Close of Trial

At the beginning of proceedings the next day, the court noted for the record that counsel had been working with the court "in the back" on jury instructions. The court stated that it had refused one instruction requested by Moorman. The refused instruction was

> once the Commonwealth has proved that there was an unlawful killing, then you may but are not required to infer that there was malice, and that the act was murder in the second degree, unless from all the evidence you have a reasonable doubt as to whether malice was -- whether malice existed.

The court stated on the record that because of the number of murder counts, the requested instruction would be confusing to the jury. When the court requested Moorman to elaborate or comment on the declined instruction, he declined, stating that the "instruction speaks for itself." The jury subsequently convicted Moorman of all charges. This appeal follows.

ANALYSIS

Moorman alleges the circuit court erred (I) in denying the motions to strike one of the murder charges where Moorman should not have been convicted of both aggravated murder and first-degree murder, (II) in admitting the text message over Moorman's objection, as it was inadmissible hearsay, and (III) in denying the jury instruction requested by the defense regarding malice. We hold that the circuit court committed reversible error by convicting Moorman of both aggravated murder and first-degree murder, violating his state and federal constitutional rights against double jeopardy.

I. <u>The circuit court denying Moorman's motions to strike either of his murder charges, resulting in two murder convictions, is a violation of the Double Jeopardy Clauses of the United States Constitution and the Constitution of the Commonwealth of Virginia.</u>

This Court reviews de novo whether "multiple punishments have been imposed for the same offense in violation of the double jeopardy clause." *Commonwealth v. Gregg*, 295 Va. 293, 296 (2018). Where a defendant is charged with multiple crimes in the same trial, "the double jeopardy defense does not apply unless: (a) the defendant is twice punished for one criminal act, and (b) the two punishments are either for the same crime or one punishment is for a crime which is a lesser included offense of the other." *Severance v. Commonwealth*, 295 Va. 564, 572 (2018) (emphasis omitted). When reviewing a double jeopardy claim, or a claim based on statutory interpretation, this Court conducts a de novo review. *Davis v. Commonwealth*, 57 Va. App. 446, 455 (2011).

The Double Jeopardy Clauses of the Constitution of the United States and the Constitution of the Commonwealth of Virginia protect "against multiple punishments for the same offense." *Ostrander v. Commonwealth*, 51 Va. App. 386, 392 (2008). Where the accused is tried in a single trial, the Double Jeopardy Clause assures "that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." *West v. Dir. of the Dep't of Corr.*, 273 Va. 56, 63 (2007). "[A] lesser included and a greater offense are the 'same,' and conviction and punishment for both offends this constitutional guarantee [of the Double Jeopardy Clause]." *Rea v. Commonwealth*, 14 Va. App. 940, 945 (1992). When the accused "is improperly convicted for a lesser included offense, the proper remedy is to vacate both the conviction and sentence on the included offense, leaving the conviction and sentence on the greater offense intact." *Brown v. Commonwealth*, 222 Va. 111, 116 (1981) (quoting *United States v. Buckley*, 586 F.2d 498, 505 (5th Cir. 1978)).

Virginia appellate courts have applied these principles consistently. In *Brown*, our Supreme Court vacated the appellant's lesser-included assault and battery conviction where he had been found guilty of the greater offense, unlawful wounding. *Id.* In *Buchanan v. Commonwealth*, 238 Va. 389, 414-15 (1989), the appellant was convicted of four counts of first-degree murder and one count of capital murder for the killing of four people. There, the Commonwealth conceded that the appellant had "one too many first[-]degree murder convictions," and the Supreme Court vacated the first-degree murder conviction that related to the same decedent as the capital murder conviction. *Id.* at 415. Finally, in *Rea*, our Court vacated the appellant's convictions and sentences for three counts of first-degree murder where he had also been convicted of three counts of capital murder for the same three decedents. 14 Va. App. at 945.

One of Moorman's two convictions is for a crime that is a lesser-included offense of the other. The punishments were for both the greater offense, aggravated murder, and the lesser-included offense, first-degree murder. Code § 18.2-31 was amended in 2021 to replace "capital murder" with "aggravated murder." *See* 2021 Va. Acts Spec. Sess. I chs. 344, 345. This Court has previously determined that first-degree murder is a lesser-included offense of aggravated murder. *See Rea*, 14 Va. App. at 945 (vacating the appellant's three first-degree murder convictions where he had been convicted of three counts of capital murder for the same decedents). Since Moorman was convicted of aggravated murder and first-degree murder, the lesser-included conviction must be vacated. Consequently, Moorman's conviction and sentence for first-degree murder must be vacated.

The Commonwealth argues that Moorman waived his constitutional rights. The Commonwealth argues that Code § 19.2-266.2(A) is controlling: "Defense motions or objections seeking . . . (ii) dismissal of a warrant, information, or indictment or any count or charge thereof

- 8 -

on the ground that: . . . (b) the defendant would be twice placed in jeopardy in violation of" the Fifth Amendment of the Constitution of the United States or Article I, Section 8 of the Constitution of Virginia "shall be raised by motion or objection." And Code § 19.2-266.2(B) requires such a motion to be in writing and filed "not later than seven days before trial in circuit court[.]" *See also Williams v. Commonwealth*, 57 Va. App. 750, 768 (2011). Moorman conceded that he did not file a written motion to dismiss on double jeopardy grounds.

The Commonwealth further argues that Moorman invited the error that he now seeks to challenge. In *Rompalo v. Commonwealth*, 72 Va. App. 147, 155 (2020), we determined that, "a motion to strike the evidence presented after the Commonwealth's case-in-chief is a separate and distinct motion from a motion to strike all the evidence . . . made after the defendant has introduced evidence on his own behalf." Where a defendant presents evidence on his own behalf and fails to renew a motion to strike, the issue is not preserved. In *Rowe v. Commonwealth*, 277 Va. 495, 502 (2009), our Supreme Court affirmed that assault and battery of a law enforcement officer was a lesser-included offense of attempted capital murder of a law enforcement officer. The Commonwealth argues that *Rowe* applies here because at the circuit court, the defendant in *Rowe* argued that assault and battery of a law enforcement officer was a lesser-included offense of attempted capital murder of a law enforcement officer, but on appeal argued that the assault was not a lesser-included offense, thus not preserving the issue. *Id.* at 503. Thus, the nature of the non-preservation, here, is analogous and applicable to the case at bar.

Additionally, the Commonwealth argues that we should hold that Moorman invited the error by not preserving the issue, *see id.*; *Alford v. Commonwealth*, 56 Va. App. 706, 709 (2010); however, a failure to preserve an issue does not equate to inviting an error. We have said that "[t]he invited error doctrine allows an appellate court to consider errors of law as waived when a party 'attempt[s] to take advantage of the situation created by his own wrong.'" *Nelson v.*

*Commonwealth*, 71 Va. App. 397, 404 (2020) (second alteration in original) (quoting *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006)). Moorman always maintained that he should not be found guilty of first-degree murder *and* aggravated murder, even explicitly stating, "[first-degree murder] is not a lesser included of aggravated. That was my objection." This objection is not one based on any presented evidence, but rather one of law, so there was no necessity to renew this motion at the conclusion of evidence; unlike the motions referenced by the Commonwealth from *Rowe*. There was never a point of hiding the ball or switching hands. Moorman's objections as to double jeopardy were consistent. While Moorman's objections were proper, we hold that he did not preserve them for appeal as he did not file a written notice to appeal on double jeopardy grounds. Code § 19.2-266.2(B); *Williams*, 57 Va. App. at 768.

Applying the ends of justice exception, Moorman meets the two requirements: 1) the trial court erred; and 2) Moorman was denied an essential right. *See Brittle v. Commonwealth*, 54 Va. App. 505, 513 (2009). The circuit court erred in convicting and sentencing Moorman for both aggravated murder and first-degree murder of the same victim. Moreover, Moorman was denied an essential constitutional right, guaranteed by our state and federal constitutions. The error here was "clear, substantial and material" as mandated by our caselaw. *West v. Commonwealth*, 43 Va. App. 327, 338 (2004) (the lens by which our Court reviews applications for the ends of justice exception). The two convictions and sentences violated Moorman's protections under the Double Jeopardy Clauses of both the Constitution of the United States and the Constitution of the Commonwealth of Virginia. Moorman has a constitutional guarantee that trial courts "do[] not exceed [their] legislative authorization by imposing multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977).

Therefore, we apply the ends of justice exception to correct the error and reverse and vacate Moorman's conviction for first-degree murder. "The error in this case is so contrary to

- 10 -

fundamental notions of justice that to permit it to pass uncorrected would seriously undermine the integrity of our judicial system." *Brown v. Commonwealth*, 8 Va. App. 126, 133 (1989). Few things rise to the high threshold for application of the ends of justice exception. However, allowing a man's state and federal constitutional rights against double jeopardy to be violated and pass uncorrected would undoubtedly be error that "undermine[s] the integrity of our judicial system." *Id.*

II. Best and narrowest ground doctrine addresses the alleged errors of admitting Moorman's text message and in denying the jury instruction requested by the defense.

Our Supreme Court has often stated, "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). We hold that if the circuit court erred, the error was harmless as a matter of law—as to the alleged error of admitting Moorman's text messages—and Moorman has waived the issue—as to denying the jury instruction requested by the defense. *Commonwealth v. White*, 293 Va. 411, 418 (2017). The harmless-error doctrine is a legislative mandate[1] and check on the "powers of this court to reverse the judgment of the trial court." *Walker v. Commonwealth*, 144 Va. 648, 652 (1926). The harmless-error doctrine is favored by our courts, as it "demands . . . common sense." *Commonwealth v. Proffitt*, 292 Va. 626, 641 (2016) (quoting *Oliver v. Commonwealth*, 151 Va. 533, 541 (1928)). It is the imperative of a "reviewing court to consider the trial record as a whole and to ignore errors that are harmless" lest they "retreat [] from their responsibilities, becoming instead 'impregnable citadels of technicality.'" *United States v. Hasting*, 461 U.S.

---

[1] "Harmless error is a legislative mandate, which has been part of our statutory law since the early 1900s, and limits the adjudicatory power of Virginia appellate courts." *White*, 293 Va. at 419.

- 11 -

499, 509 (1983) (alteration in original) (quoting R. Traynor, The Riddle of Harmless Error 14 (1970)).

As to the alleged error of admitting Moorman's text message, the circuit court's authority as to whether to admit evidence is within the broad discretion of the circuit court and will not be disturbed on appeal absent an abuse of discretion. *Bynum v. Commonwealth*, 57 Va. App. 487, 490 (2011). Here, the circuit court at most committed harmless evidentiary error as there was other "overwhelming" evidence of guilt. *Salahuddin v. Commonwealth*, 67 Va. App. 190, 212 (2017). In denying the jury instruction requested by the defense regarding malice, the issue is procedurally waived because the basis of Moorman's objection to the court's refusal to give the requested instruction is not included in the transcript. Rule 5A:18; *see Smith v. Commonwealth*, No. 1235-12-3, slip op. at 1-3, 2013 Va. App. LEXIS 278, at *2-4 (Oct. 8, 2013).

## CONCLUSION

Accordingly, we hold that Moorman's conviction for first-degree murder constituted a violation of Moorman's rights against double jeopardy guaranteed by the Constitution of the United States and the Constitution of the Commonwealth of Virginia. We reverse and vacate the first-degree murder conviction. We affirm Moorman's other convictions, including for aggravated murder. We remand the case to the circuit court for resentencing and for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded*.